IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
VIRGINIA,
HARRISONBURG DIVISION

US Bank National Association,
As Purported Trustee of Cabana Series III Trust,
Plaintiff

v.

ELIZABETH HARING et al,
Defendants

Shenandoah County General District Court
Case Nos. GV23-187

JURY TRIAL DEMANDED

5:23-cv-00028

**RECEIVED**
MAY 15 2023
SHEN CO GENERAL DISTRICT COURT

CLERK'S OFFICE U.S. DISTRICT COURT
AT HARRISONBURG, VA
FILED
MAY 15 2023
LAURA A. AUSTIN, CLERK
BY: /s/
DEPUTY CLERK

## NOTICE OF REMOVAL

Defendant Elizabeth Haring now files this Notice of Removal pursuant to
28 U.S.C.A. § 1332, 28 U.S.C.A. § 1331, ~~28 U.S.C.A. § 1443~~ w/h, 28 U.S.C. § 1446(a), 28
U.S.C. § 1446(b), 28 USC 1446(b)(3) and 28 U.S.C. § 1446(c). Defendant Haring hereby notifies this Court
and the Plaintiff that she is removing the above captioned matters from the Shenandoah
County General District Court ("State Action") to the United States District Court for the
Western District of Virginia, Harrisonburg division. In support thereof, defendant states
the grounds for removal are as follows:

### Statement of the Case

1. This case arose as an unlawful detainer action in state Court on or about
   February 21, 2023.

2. Plaintiff's unlawful detainer case came as a result of Plaintiff's unlawful
   foreclosure on June 17, 2019.

3. On or about March 1, 2023, Plaintiff had the sheriff attempt service by posting on
   the door of a property Ms. Haring formerly owned and occupied as her primary

residence the majority of the time between February 2006 through July 2018 before she relocated to Pennsylvania in late August 2018.

4. On March 20, 2023, Ms. Haring and Mr. Yeh appeared in state Court.

5. Plaintiff timely filed their bill of particulars by April 10, 2023.

6. Ms. Haring received Plaintiff's Bill of Particulars (an "other paper" under removal law) after she got out of the hospital April 15, 2023 and later retrieved her mail on April 16, 2023. Removal is timely.

7. Ms. Haring timely filed her answer and grounds of defense on May 1, 2023.

8. The outcome of this case determines whether Ms. Haring will retain her property located at 53 Leigh Court Basye, Virginia (hereinafter the "Tower House").

9. The property is needed for defendant's income both now and in the future. Ms. Haring cannot retire in the future without it.

10. Removal is proper for a number of reasons: there is complete diversity of citizenship of the parties, the amount in controversy exceeds $75,000, questions of Federal law, constitutional questions, and questions of Virginia law. It involves questions of first impression and unresolved questions of law.

## Original Jurisidiction under 28 USC 1332 Exists

36. There is complete diversity of citizenship of the parties.

37. Ms. Haring is a natural person who became a citizen of Pennsylvania in September 2018. She purchased her permanent residence in Schwenksville, Pennsylvania on or about December 12, 2019. She continues to own her Pennsylvania permanent residence at 3234 Forest Lane Schwenksville, PA, which is incorporated by reference. Her vehicle is registered in Pennsylvania.

She has a concealed carry permit #46-00073544 in Pennsylvania issued on July 14, 2021 for self-defense following a break-in to her residence, a pitbull attack on her dog and repeated attempted attacks, etc. Ms. Haring has had to come to Virginia and temporarily stay in Virginia when her father was hospitalized, take care of issues with two foreclosed properties (break-ins, damage, trespassing, trees falling, maintenance, etc.), obtain medical care, etc. After her medical care is completed in a few weeks, Ms. Haring intends to return home to Pennsylvania again. When Ms. Haring resumes work with her employer after her medical care is completed, she will be working fully remote. *which is incorporated by reference*

38. Mr. Coomes is the estranged spouse of Ms. Haring. He is a natural person who was born in Indiana and has been a citizen of Indiana most of his life. He presently works fully remotely. He presently rents in Phoenixville, Pennsylvania. However, his family and relatives live in Indiana, where he intends to return.

39. Prior to this matter commencing, Mr. Coomes signed an agreement with Plaintiff that he does not have possession of the property and surrendered any interest in the property. *See Exhibit A* Mr. Coomes reported he was never served with process *See Exhibit B. Mr. Coomes consents to removal* *Exhibit B* in this case. The state Court dismissed Mr. Coomes from the case.

39(B) — Plaintiff is joint PD thwart removal by improperly suing and maintaining a

40. Mr. Yeh is a naturalized US citizen originally from Taiwan, who reportedly *case against Mr. Coomes* emigrated to the US over 50 years ago. He is a natural person who is a citizen of Virginia. His vehicle displays Virginia tags. He occupied and had exclusive possession of the subject property in Basye, Virginia from on or about February 10, 2023 until Plaintiff asked the sheriff to serve a no trespass Order upon him and removed him on April 10, 2023. Mr. Yeh is transient now with no fixed

address. However, he reported to law enforcement and a Sky Bryce security officer that he returned to live in Fairfax County, Virginia on or about April 10-11, 2023. Ms. Yeh consented to Removal. See Exhibit C

41. Plaintiff is an American bank holding company headquartered in Minneapolis, Minnesota, and is incorporated in Delaware.

39. The Amount in Controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

39. The subject property is a five bedroom house in Bryce Resort. It has a fair rental value of $8.9M over defendant's lifetime.

40. Plaintiff purportedly made a credit bid of $220,000 by phone for the property at the time of the foreclosure auction. Plaintiff attempted to sell the property for $299,000 in July 2021. Last Spring, Plaintiff opined they believed the property to be worth $350,000.

41. The property's current Shenandoah County tax assessment is $233,000. Virginia law requires the assessment to be 100% of fair market value.

42. Ms. Haring had the property appraised prior to her bankruptcy cases. It appraised for $150,000 in late 2012. The same appraiser reviewed the comps in October 2017 and opined the value was $150,000 at that time.

43. Ms. Haring reported its fair market value as $150,000 to the Bankruptcy Court and included a copy of the appraisal in the record. Plaintiff did not object or dispute the value.

44. The subject property has been vandalized, damaged, and deteriorated since May 2017. The garage door, crawl space, and storage room doors are broken,

the deck has a structural issue and the wood is deteriorated, there is roof and gutter damage, a little water incursion/wall damage from overflowed gutters, interior water damage from burst water pipes including mold in one bedroom, the living room hardwood floor and subfloor require replacement, the kitchen floors require replacement, there is significant wood boring beetle, insect and woodpecker damage (requiring tenting), etc. Defendant avers the fair market value has declined to approx. $150,000 now due to the changes in the condition of the property and market correction.

45. However, there is no question it is worth more than $75,000. Although the property is dated and needs a lot of work, it is over 2,800 square feet, it has premium peg and groove hardwood floors throughout, two kitchens, two living rooms, two dining rooms, two laundry facilities, three bathrooms, five bedrooms, sink and vanities in three of the bedrooms, casement windows throughout, genuine wooden paneling throughout, two breezeways, a tower, an attached two car garage, a two-tiered front porch, and a two-tiered rear deck. The property sits on over .56 acres in Bryce Resort. It has panoramic mountain views from three sides of the house.

46. Plaintiff filed a bankruptcy claim in case no. 17-13497 alleging Ms. Haring owed over $77,000 in arrearages and fees. Ms. Haring incorporates it by reference as if fully set forth herein.

47. Defendant incurred damages due to breach of contract and tortious interference. Defendant's counsel Henry McLaughlin filed a lawsuit in Henrico County state Circuit Court against Plaintiff for $75,000 in connection with this

tortious conduct. Plaintiff removed it to Richmond US District Court, where it is pending.

## Statement of Facts

48. Ms. Haring purchased the subject property on or about August 22, 2004.

49. She borrowed $171,000 from Lehman Brothers at that time.

50. In 2008, Lehman Brothers declared bankruptcy and rejected their executory contract with MERS. Pursuant to the Bankruptcy code, other Federal laws, and relevant authority, MERS lacked authority to act as a nominee for Lehman Brothers in virtue of the fact their executory contract with Lehman Brothers was rejected and ended. Plaintiff relies upon void assignments and lacks standing.

51. In prior litigation before this Court (*Coomes v. Structured Asset Securities*) and in the pending case filed by Mr. McLaughlin in late 2022, Plaintiff admitted MERS lacked authority to act as a nominee for Lehman Brothers in virtue of the fact their executory contract with Lehman Brothers was rejected and ended, and that Plaintiff relies upon void assignments and lacks standing.

52. Plaintiff and their servicer, predecessors, employees, representatives, and agents violated federal law (Dodd Frank) and the HAMP rules in connection with a 2015 fully completed HAMP loan modification application Ms. Haring submitted. They dual tracked, sat on the application, and made false statements in Ms. Haring's chapter 13 Bankruptcy in 2016, causing it to be dismissed on August 3, 2016. Counsel for Plaintiff falsely alleged Ms. Haring had failed to make her post-petition mortgage payments. Shortly after dismissal of her Bankruptcy, Plaintiff accelerated the loan and referred Ms. Haring to foreclosure.

53. In late 2016, Plaintiff admitted Ms. Haring was eligible for the HAMP loan modification, and sent her a package offering to modify the loan to a payment of $1,243 per month.

54. Plaintiff never modified the loan.

55. Instead, Plaintiff tried to foreclose again in early January 2017.

56. Ms. Haring obtained a Court Order to enjoin the foreclosure.

57. Plaintiff illegally took possession of the property in July 2017 on the basis it was allegedly vacant or abandoned. Plaintiff's agent damaged the property, left it unsecured, and as a result it was burglarized in July 2017.

58. The property was neither vacant nor abandoned. It was and remains fully furnished. Ms. Haring was in litigation to keep the property – clearly she did not abandon it.

59. Plaintiff's violation of the HAMP rules and Dodd Frank, refusal to implement the loan modification, unlawful taking of possession of the property and acts resulting from it, including but not limited to the burglary, as well as their tortious interference with Ms. Haring's rental of the property caused her to incur lost rental income, erroneous late charges, erroneous arrearages, erroneous foreclosure fees, legal fees, court costs, and other damages.

60. Ms. Haring sought chapter 13 Bankruptcy protection again on October 16, 2017.

61. Plaintiff filed a claim alleging Ms. Haring owed over $95,000 in arrearages and fees. Ms. Haring objected to the claim.

62. Ms. Haring's chapter 13 case was dismissed on July 10, 2018 primarily due to the amount of the alleged arrearages, which caused concerns about Plan feasibility.

63. In July 2018, Plaintiff sent an agent to the property and tortuously interfered with Ms. Haring's rental of the property. The agent stated the tenants should not be there, instructed the tenants to leave, and asserted the house was in foreclosure. The tenants left and Ms. Haring was unable to rent the property thereafter as a result.

64. In 2019, after the foreclosure, Plaintiff again took possession of the property when it sent agents to drill the locks out and change the locks. Ms. Haring did not have possession of the property at the time Plaintiff filed its first unlawful detainer case in October 2019.

65. In July 2021, Plaintiff sent agents to drill the locks out and change the locks again, and put the property up for sale without the benefit of a judgment of possession. Plaintiff subsequently returned possession to Ms. Haring.

66. On or about July 19, 2022, Plaintiff sent a letter threatening to unlawfully take possession of the property again on August 22, 2022, remove all of Ms. Haring's personal property, all personal property and vehicles of Mr. Yeh and Mr. Coomes stored there, and dispose of it without further notice. In response, Mr. Yeh went to the property, began occupying it, and asserted possession of it. Ms. Haring's lawyer wrote to Plaintiff's counsel multiple times regarding their threat, but they did not back down until Mr. Yeh entered personal bankruptcy on or about August 22, 2022.

67. Mr. Yeh remained at the property until on or about December 26, 2022. After he received an eviction notice from Plaintiff in early February 2022, he returned to the property again, occupying it and taking exclusive possession. On February 12, 2023, Mr. Yeh emailed the parties to this effect. Mr. Yeh remained in possession, despite Ms. Haring's repeated unsuccessful attempts to remove him in February, March, and April 2023, until he was forcibly removed on April 10, 2023 by the Sheriff deputy.

68. In spite of the fact Ms. Haring was hours away, she did not have possession or occupy the subject property, and was not detaining the property on or about February 21, 2023, and there was no case or controversy, Plaintiff commenced this action against her.

## The matter arises under Federal law, Plaintiff's state-law claim raises a disputed and substantial federal question of law, it involves Constitutional questions, the interpretation of Federal laws

45. This matter arises under and involve an interpretation of the US Constitution, Federal laws, including the bankruptcy code, Dodd Frank, the HAMP rules, and the ADA.

46. The United States District Court has original jurisdiction to interpret and enforce the bankruptcy code, Dodd Frank, and the ADA.

47. Under Virginia law, homeowners have standing to challenge foreclosures, void assignments, and void legal actions. Nearly all Circuit Courts in Virginia have held borrowers have standing. However, this is an unresolved area of Virginia law. The Virginia Court of Appeals has yet to decide whether borrowers have standing to challenge void assignments, etc. Ironically, the issue is now before the Virginia Court

of Appeals in connection with Ms. Haring's other foreclosed property in the matter of Elizabeth Haring and Bank of NY Mellon. An opinion is anticipated soon. Both sides anticipate that unresolved legal question will ultimately be decided by the Virginia Supreme Court because the losing side will note an appeal.

48. Standing is a threshold issue in this case – Ms. Haring's standing to challenge the actions and Plaintiff's standing to bring the actions and foreclose. Since Plaintiff relied upon void assignments, their claim to title, and claim to possession as a result of foreclosure cannot be enforced. This Court can and ought to certify the unresolved question of Virginia law to the Virginia Supreme Court.

49. Since the foreclosure and unlawful detainer case was filed against Defendant in violation of the requirement of a case or controversy, Virginia law, federal law, the 5th amendment, 14th amendment, and binding US Supreme Court authority, they are void and ought to be dismissed.

50. Plaintiff was not a creditor of Ms. Haring within the meaning of the Bankruptcy code and Virginia law because there was a break in the chain of title and Plaintiff relied upon void assignments.

51. Removal is also proper under the "Grable Doctrine" because (1) plaintiff's state-law claim raises a disputed and substantial federal question, and (2) removal would not disturb the balance between state and federal judicial responsibilities. Plaintiffs' state-law claims require a state court to resolve inherently federal issues. The state court's decision could affect an area of law that Congress designated to the federal courts to provide uniformity among the states. See *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*

52. Furthermore, these matters involve Constitutional questions. There is no case or controversy to satisfy the Constitution's case or controversy requirement. There are also both legal and equitable defenses to foreclosure in this case.

53. Plaintiff has no standing and no damages.

54. There is no justiciable case or controversy against defendant. Among other things, Ms. Haring did not even actually have possession of the subject property prior to and at time time Plaintiff filed suit February 21, 2023 until Mr. Yeh was forcibly removed by law enforcement on April 10, 2023.

55. If the notice of removal is defective in any respect, Ms. Haring prays for leave to amend as a reasonable accommodation pursuant to the ADA and in virtue of the fact she is a lay person and unrepresented in this case.

RESPECTFULLY SUBMITTED,

*[signature]*

ELIZABETH HARING - email fluffy12950 77@gmail.com
3234 Forest Lane Schwenksville, PA 19473
215 859 7264

fax to 404-745-8121

CERTIFICATE OF SERVICE

The aforegoing Corrected Notice of Removal was emailed to Counsel for US Bank, hand delivered and filed to the Shenandoah General District Court, and mailed FedEx Express Mail, postage prepaid, to counsel for US Bank, this 15th day of ~~February~~ May 2023.

hand delivered / emailed and mailed to Charles Yeh & Charles Coones
109-B Edwards Ferry RD NE
# 1076
Luray VA 20176

ELIZABETH HARING

Charles Coones
125 Sloan RD, Phoenixville PA 19460